WEBSTER, Respondent, vs. ESTATE OF LAWSON, Appellant.

*February 4 — February 19, 1889.*

*Partnership: Accounting: Suretyship: Estates of decedents: Contingent claim: Parties: Limitation.*

W. & L., as partners, holding mortgages on certain logs and lumber, took possession thereof and proceeded to manufacture and sell the same under an agreement with the mortgagors to apply the proceeds on the mortgage debts, the residue if any to be returned to such mortgagors. The value of the property largely exceeded the debts. L. assumed charge of the property and of the execution of the agreement with the mortgagors, one S. being employed by the firm to do the work. Without the knowledge of W., L. became a secret partner with S., and they together, fraudulently and to the injury of W., mismanaged the business of executing the agreement with the mortgagors, converting large quantities of the mortgaged property and its proceeds to their own use without accounting therefor to W. or the firm of W. & L. Afterwards the firm of W. & L. was dissolved, and in the division of assets the mortgages and mortgaged property were transferred to L., who took all the rights and assumed all the obligations, liabilities, and duties of the firm in respect thereto. L. having died, the mortgagors brought suit to compel W., as surviving partner, to account for the mortgaged property and its proceeds. The administrators of L. refused to assume the defense, and W. was

compelled to defend the suit and afterwards to pay a judgment rendered against him therein. *Held:*

(1) After the mortgaged property and the rights and obligations pertaining thereto were transferred to L., the same ceased to be partnership property, and as between L. and W. the latter became a mere surety for the faithful performance by L. of the agreement with the mortgagors. The amount of the judgment which W. was compelled to pay by reason of L.'s failure to perform such agreement, is, therefore, a proper claim against the estate of L., without reference to other partnership matters. [Whether W. has a right to be reimbursed by said estate for his expenses incurred in defending the suit brought by the mortgagors, not determined.]

(2) The fact that S. may also be liable to W. by reason of his participation in the fraudulent mismanagement of the business as aforesaid, does not interfere with the right of W. to present his claim against the estate of L.

(3) Such claim of W. was a contingent claim which did not become absolute until he paid the judgment, and (under sec. 3860, R. S.) it might be presented at any time within one year after it so became absolute.

APPEAL from the Circuit Court for *Winnebago* County.

This proceeding arises out of the judgment in *Clinton v. Webster*, 66 Wis. 322, and the transactions upon which such judgment is based. During the most of the time of such transactions *Webster*, the claimant and respondent herein, and Publius V. Lawson, since deceased, were partners. That action related to their copartnership business and affairs, and, Lawson having died in 1881, it was brought against *Webster* as surviving partner.

The transactions above mentioned were substantially as follows: In June, 1879, the firm of Clinton, Gillis & Co., which was then engaged in the manufacture and sale of lumber and in a general lumber and logging business at Clintonville in this state, executed to one Hay a chattel mortgage on a large quantity of logs, to secure the payment of a promissory note of the firm to Hay for $3,500. In August of the same year, Clinton, Gillis & Co. executed to Webster & Lawson another chattel mortgage on a large

amount of logs, lumber, and other personal property, to secure the payment of four promissory notes made by that firm to Webster & Lawson, amounting in the aggregate to $2,100. In October, 1879, or earlier, Webster & Lawson became the holders and owners of the note and mortgage so executed to Hay, on which $3,000 then remained unpaid. Thereupon, pursuant to an agreement between the two firms made October 10, 1879, Webster & Lawson took possession of the mortgaged property, and proceeded to work up the logs and sell the lumber and other mortgaged property, under a contract with Clinton, Gillis & Co. to apply the proceeds thereof in payment of the mortgage debts.

The action of *Clinton v. Webster* was brought to compel *Webster*, as surviving partner of the firm of Webster & Lawson, to account for such property and its proceeds. On such accounting it was found that the property and proceeds were sufficient to pay both mortgage debts in full, and $4,195.27 in addition thereto. On December 10, 1884, the circuit court rendered judgment against *Webster* for that sum, and for one half the aggregate costs. On appeal, this court on May 15, 1886, affirmed the judgment as to the $4,195.27, and directed the circuit court to insert in the judgment full costs in favor of Clinton, Gillis & Co. The judgment was modified accordingly, and thus became a judgment against *Webster* for $4,195.27, and for costs adjusted at $2,417.22; total, $6,612.49.

The present proceeding is a claim by *Webster*, filed May 11, 1887, in the proper county court, against the estate of his former partner, Lawson, for the amount of such judgment and interest, and for $5,000 expenses alleged to have been necessarily incurred by him in the defense of the action of Clinton, Gillis & Co.

In his complaint filed in support of such claims, *Webster* alleges substantially the facts above stated, and, further, that he was compelled to pay, and, on or about August 7,

1886, did pay, the judgment of Clinton, Gillis & Co. against him, and the interest thereon from December 10, 1884, in full; that he tendered the defense of that action to the administrators of the estate of Lawson, who refused to defend the same; that he necessarily expended $5,000 in defending the same; that the estate of Lawson remains unsettled; and that the letters of administration therein remain in force.

It is further alleged in the complaint, in substance, that from the time Webster & Lawson took possession of the mortgaged property, Lawson had the entire charge thereof and of the manufacture and sale of the logs and lumber and the disposition of all the mortgaged property. It is then alleged that after Webster & Lawson had taken possession of the mortgaged property they made a contract with one Stacy, in which the latter agreed for a stipulated price to saw, sell, and ship the logs and timber, and Webster & Lawson agreed to pay him in addition the expenses of raising certain sunken logs, should he raise the same. That Stacy commenced sawing the logs, and selling and shipping the lumber, rendering accounts thereof from time to time to Webster & Lawson at Menasha, which was their principal place of business, and such transactions were entered as reported on the books of the firm under the head of "Clintonville Account," which was designed to be an accurate account of all transactions affecting the mortgaged property.

The complaint then proceeds to allege and charge that in January, 1880, Lawson, without the knowledge of *Webster*, became a secret partner with Stacy in the business of executing such agreement, and that Lawson and Stacy & Lawson in the execution thereof were guilty of many acts of fraud, greatly to the injury of *Webster*. It is charged that they converted large quantities of the mortgaged property and the proceeds thereof to their own use, without account-

ing therefor to *Webster* or the firm of Webster & Lawson
at Menasha, where such account was kept; that they over-
charged the wages of the men, the expenses of the business,
and the cost of supplies; and that they rendered false ac-
counts of their doings to *Webster* or Webster & Lawson, at
Menasha. The acts of alleged fraud are stated in detail
and at great length, but the foregoing is a sufficient sum-
mary of them for the purposes of this appeal. It is claimed
that the judgment in the case of Clinton, Gillis & Co., was
the direct result of such frauds on the part of Lawson and
Stacy & Lawson.

The tenth paragraph of the complaint, upon which the
decision of the appeal herein is mainly rested, is as follows:
" (10) That in the summer of 1880 this claimant became dis-
satisfied with the management of said business at Clinton-
ville, and became suspicious that lumber manufactured from
said logs was being disposed of or disappearing without any
account thereof being rendered to said Webster & Lawson,
and that said ' Clintonville account,' and the reports and
statements rendered by Stacy & Lawson, which were en-
tered in said account, were incorrect; that said Lawson in-
sisted and assured this claimant that they were correct and
all right; that differences arose between them in relation
thereto, and on the 1st day of November, A. D. 1880, the
partnership between them was dissolved by agreement;
that this claimant insisted that said Lawson should take the
said ' Clintonville account ' and said chattel mortgages,
and assume the same and the rights and obligations of the
firm of Webster & Lawson under the contracts of October
10, 1879, aforesaid, or that said Stacy or Stacy & Lawson
should account to said Webster & Lawson fully for all of
said logs, and for the lumber, for the sawing of which under
said contracts they had charged Webster & Lawson; that
it was agreed between them that in the division of the as-
sets and property of said firm of Webster & Lawson the

said Lawson would take said 'Clintonville account' as a part of said property and assets; that the understanding between them in relation thereto was that said Lawson should take all the rights and assume all the liabilities of the firm of Webster & Lawson growing out of the dealings and transactions between said firm of Webster & Lawson and Clinton, Gillis & Co., and of said contracts of October 10, 1879, and of all the dealings and transactions concerning said logs and lumber and property mentioned and included in the chattel mortgages aforesaid." It is alleged in the following paragraph that the " Clintonville account," when transferred to Lawson, showed there was due on the chattel mortgages $6,582.57, but that there was charged to Lawson therefor only $5,082.57, being a deduction of $1,500, and that such deduction was made upon the faith of Lawson's representation that the mortgaged property was insufficient to pay the whole amount of the mortgage debts.

After the complaint was filed in the county court, the administrators of the estate of Lawson moved in that court that the same be quashed and the claim dismissed for the following reasons: " (1) Because the claim involves only specific items of a general copartnership account, which cannot be settled except by a bill in equity to adjust all copartnership accounts. (2) Because the claim is not a contingent claim, and the time within which to file and present the same expired on or about the 12th day of July, 1883; wherefore the same is barred by lapse of time and the limitation by statute provided in such claims against the estates of deceased persons. (3) Because the claim of a partner against a deceased partner for fraud or negligence in copartnership business does not survive against the estate of a deceased partner. (4) Because the claim of the claimant *Webster* is a claim against the firm of Stacy & Lawson, composed of Wm. H. Stacy and Lawson, deceased, Wm. H. Stacy being alive and surviving; and the trial thereof re-

quires the presence of said Stacy as a party. (5) Because the claim is barred by the general statute of limitations against actions, to wit, six years."

The county court denied the motion, and on appeal by the administrators the circuit court affirmed the order of the county court in that behalf. This appeal is by the administrators from the order or judgment of affirmance made by the circuit court.

For the appellant there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*.

For the respondent there was a brief by *Gary & Forward*, and oral argument by *George Gary*.

Lyon, J. One of the principal grounds upon which the claim of *Webster* against the estate of Lawson, his former partner, is predicated, is stated in paragraph 10 of the complaint, which is set out at length in the foregoing statement of facts. Those allegations are, in substance, that in the division of the assets of the firm of Webster & Lawson on the dissolution of their copartnership, the "Clintonville account," so called, including the chattel mortgages, the demands against Clinton, Gillis & Co. thereby secured, the interest of Webster & Lawson in the mortgaged property and in all contracts and transactions growing out of the mortgages, and all the rights of the firm therein and thereunder, were transferred by the firm, or rather by the partners which constituted it (the firm having theretofore been dissolved), to Lawson, who thereupon assumed all obligations and liabilities of the firm in respect to the mortgaged property and the dealings therewith.

Under the above allegations, it is clear that *Webster* and Lawson segregated the property and rights thus transferred to Lawson, and the obligations and liabilities pertaining thereto or incurred on account thereof, from the balance of the partnership assets (if there were any other

assets), and vested the whole title thereto and interest therein in Lawson. From thenceforth Lawson became and was primarily chargeable with all such obligations and liabilities, and *Webster* was merely his surety for the faithful performance of such obligations and the discharge of such liabilities. See *Gates v. Hughes*, 44 Wis. 332, and cases there cited. After such transfer to Lawson, the property and rights so transferred ceased to be partnership property, and could no longer have any place in an accounting of partnership affairs. The sum which Lawson agreed to pay therefor, and which was charged to him, would alone enter into such accounting, just as the money would enter into it had he paid cash therefor, or had the same been sold for cash to any other person.

In view of these considerations, we cannot doubt that, had Lawson lived, *Webster* could, after paying the Clinton judgment, have maintained an action against him on account thereof, without reference to other partnership transactions. Such is the doctrine of *Sprout v. Crowley*, 30 Wis. 187, and the cases there cited. If *Webster* could have maintained such an action had Lawson lived, certainly the cause of action may properly be interposed in the county court by *Webster* as a claim against Lawson's estate after his death.

There seems to be no necessity that Stacy be made a party to an action or proceeding upon such claim. No independent charge of liability on account thereof is made against him. All such charges are against Lawson or the firm of Stacy & Lawson. For the consequences of the mismanagement or fraud of that firm Lawson was responsible, and no valid reason is perceived why *Webster* may not hold his estate to such liability without proceeding against his partner, Stacy. *Webster* contracted with Lawson alone, and, after the transfer to him of the "Clintonville account," trusted to him alone properly to deal with

and dispose of the mortgaged property. If others participated in the alleged mismanagement of the property to the injury of *Webster*, the latter may maintain actions therefor against them, but this does not interfere with his right to present his claim therefor in the county court against the estate of Lawson, in which proceeding the other wrong-doers cannot be joined. Joint as well as several claims against the estate of a deceased joint debtor may be presented to the county court, and there adjudicated. R. S. sec. 3848.

The case made by the complaint, in the aspect in which it is above considered, may be briefly summarized as follows: Before the dissolution of the firm of Webster & Lawson, it took possession of the mortgaged property, and became chargeable with the duty of disposing of enough of it to pay the debts secured by the mortgages, and returning to the mortgagors the residue of the property, or the proceeds of such residue. The value of the property was largely in excess of such debts. Lawson assumed the charge of the property and the performance of such duties. While in the execution thereof, and, as *Webster* believed, in the proper execution thereof, the firm was dissolved, and the interest thereof in the "Clintonville account," including the mortgages, the debts they were given to secure, and the mortgaged property, was duly transferred to Lawson, who assumed all of the obligations, liabilities, and duties pertaining thereto which Webster & Lawson owed Clinton, Gillis & Co. As between *Webster* and Lawson, the former was thereafter merely a surety for Lawson for the faithful performance of his duties in the premises to Clinton, Gillis & Co. Lawson failed to perform those duties, and the result of his failure was the judgment of Clinton, Gillis & Co. against *Webster*, which could not have been recovered had Lawson properly dealt with the mortgaged property. The administrators of Lawson's estate refused to assume

the defense of the action of Clinton, Gillis & Co., and *Webster* was compelled to defend it at great expense, and afterwards to pay such judgment and interest thereon. Hence he was compelled to pay, and did pay, a large sum of money, which in justice and equity Lawson, were he alive, ought to repay, and against whom an action for money paid, laid out, and expended for his use by *Webster*, could be maintained. We cannot doubt that such cause of action is the proper subject matter of a claim against Lawson's estate, which the county court may adjudicate.

If the foregoing views are correct, they overrule all objections interposed to the complaint on the merits, leaving only for determination the objection that the claim was not filed in the county court within the time limited by statute. Strictly, this objection is not available on this motion to quash and dismiss the claim and complaint. The motion is the equivalent of a general and special demurrer to the complaint. It is general, because it denies that a cause of action is stated therein; and special, because it asserts that the complaint shows on its face that some statute of limitation has run against the claim. The complaint does not state when the claim was filed in the county court, or the time allowed for the presentation of claims. Hence, it does not appear on its face that it is barred by the statute, and a special demurrer thereto on the ground that the statute had so run would necessarily be overruled. But it is stated in the printed case (perhaps it is conceded) that the time allowed by the county court for the presentation of claims against the estate of Lawson expired July 12, 1883, and that the claim herein was filed in that court May 11, 1887. We will dispose of the objection, therefore, on the theory that those facts are properly before the court.

It has already been observed that, as between *Webster* and Lawson, the former stood in the relation of surety for the latter, for the proper performance of the obligations

which the firm of Webster & Lawson was under to Clinton, Gillis & Co. on account of the mortgaged property. The liability of Lawson to *Webster* was a contingent liability, and remained so until *Webster* actually paid money on account of his obligation to Clinton, Gillis & Co. On August 7, 1886, he paid the judgment which that firm recovered against him because of Lawson's failure to perform his obligations and discharge his liabilities. The claim of *Webster* then became absolute, and the statute gave him one year from that date to present it to the county court. R. S. sec. 3860. He so presented it May 11, 1887, which was within the year.

It was argued by the learned counsel for the administrators that the liability became absolute at an earlier date, and he cited cases elsewhere to sustain his position. We do not care to review those cases, for the reason that it was settled by this court in *Ernst v. Nau*, 63 Wis. 134, that the claim of a surety against a principal debtor remains contingent until the surety pays the debt; and that, if the debtor has deceased, sec. 3860 gives the surety the right to present his claim, which by such payment became absolute, to the county court for allowance within one year thereafter. That decision rules the present case, and further discussion is unnecessary. Of course there is nothing in the objection that the six years statute of limitation has run against this claim.

We conclude, therefore, that the county court properly denied the motion to quash the complaint and dismiss the claim, and that the circuit court properly affirmed the order of the county court in that behalf.

What the effect would be were that portion of paragraph 10 of the complaint omitted therefrom in which are alleged the transfer of the chattel mortgages, etc., to Lawson, and the assumption by him of all liabilities growing out of the transactions connected therewith, is not here de-

termined. We must take the complaint as it is drawn, and decide this appeal upon the allegations it contains. It is sufficient that these make a case within the jurisdiction of the county court.

Only a single other averment in the complaint requires notice. It is alleged therein that a portion of the logs included in the chattel mortgages remained in Lawson's possession, undisposed of, at the time of his death, and that the same were converted to his own use by one of the administrators of Lawson's estate. Neither the value thereof nor the date of such conversion is stated. It may be doubtful whether the estate of Lawson is chargeable with the value of these logs. We are now inclined to think it is so chargeable. The legal title to the logs was in Lawson when alive, and after his death in his administrators. It would seem that the estate should be held for their value, and that the remedy of the administrators is against the party who so converted them. We leave this question undecided, however, until the circumstances are fully developed by the proofs. If the facts show that such value is not so chargeable, the same should be deducted from *Webster's* claim herein. We also withhold any ruling upon the question of *Webster's* right to be reimbursed for his expenses in his litigation with Clinton, Gillis & Co.

*By the Court.*— The judgment of the circuit court affirming the order of the county court is affirmed.